IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | Cr. No. 08-045ML |
| | ) | |
| | ) | |
| DOLORES RODRIGUEZ LAFLAMME | ) | |

GOVERNMENT'S TRIAL MEMORANDUM

I. INDICTMENT AND ELEMENTS

The indictment charges DOLORES RODRIGUEZ LAFLAMME with conspiracy to commit identity fraud in violation of 18 U.S.C. § 1028(f) (Count I), identity fraud in violation of 18 U.S.C. § 1028(a)(1) (Counts II - VII), and aggravated identity theft in violation of 18 U.S.C. § 1028A (Counts VIII - XII).

The elements of Count I are as follows:

First, that the conspiracy charged in the indictment existed between at least two people to produce and transfer identification documents produced without lawful authority;

Second, that the defendant willfully joined in that agreement; and,

Third, that at least one of the conspirators committed an overt act during the period of the conspiracy to further the purpose of the conspiracy.

The elements of Counts II - VII are as follows:

First, that on the dates alleged in the indictment, the defendant knowingly produced an identification document;

Second, when the defendant produced an identification document, the defendant did so without lawful authority; and,

Third, the production of the identification document was in or affected interstate or foreign commerce or the identification document was transported in the mail in the course of the unauthorized production/transfer.

The elements of Counts VIII - XII are as follows:

First, that the defendant knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person; and,

Second, that the defendant transferred, possessed, or used the means of identification of another person during and in relation to the conspiracy to commit identity fraud alleged in Count I of the indictment and the identify fraud alleged in Count [II - VII] of the indictment.

## II. FACTUAL SUMMARY

The government expects the evidence in this case to show the following:

Between August 1, 2006 and October 10, 2007, the defendant, Dolores Rodriguez LaFlamme, produced 35 Rhode Island driver's licenses without lawful authority. The

defendant was able to accomplish this feat through the aid of several unindicted co-conspirators and through abuse of her position as a registry clerk at the Rhode Island Division of Motor Vehicles (DMV). For each of these 35 fraudulent licenses, the defendant indicated that an out-of-state license had been surrendered, when in fact, no such license had ever existed.

During the time period alleged in the indictment, the defendant was employed as a registry clerk at the Pawtucket branch of the DMV. Part of her duties included the processing of applications for Rhode Island driver's licenses. As a registry clerk, the defendant was assigned an identifying number, in her case, number 113, which identified any transaction performed by her. Thus, every time the defendant processed a license application, her identifying number appeared in the records associated with that transaction.

Each clerk's identifying number was password protected. In order for the defendant's identifying number to be associated with a transaction, the defendant was required to log on using her private password. Whenever a clerk processed an application for a license, as part of that application, the clerk was required to collect a fee from the licensee. Each clerk had a cash drawer for maintaining the fees collected during the day. At the end of the day, the clerk's cash drawer must contain sufficient funds to account for all of the transactions performed under the clerk's identifying number. Therefore, it was important for the clerks' passwords to remain protected as a clerk's cash drawer would not balance at the end of the day if one clerk were to perform

transactions under another clerk's password-protected identifying number. The DMV instructed its clerks to protect their private passwords and not to share passwords with other individuals, because the transaction report associated with each clerk's identifying number was used to account for money that was taken in by the clerk during the day.

The procedures surrounding the applications for Rhode Island driver's licenses by out-of-state applicants are central to understanding the scheme involved in this case. As a preliminary matter, under Rhode Island law, other than an individual who surrenders a valid operator's license issued by a state or federal agency, no person shall receive a license unless the person has passed an examination. When a Rhode Island license is issued to an individual surrendering an out-of-state license, the DMV requires that the out-of-state applicant complete an application and surrender the out-of-state driver's license to the Rhode Island DMV. The DMV maintains these applications on file and returns the out-of-state driver's license to the issuing state.

When a Rhode Island registry clerk issues a Rhode Isalnd license to an out-of-state applicant, the clerk is required to obtain the out-of-state license and the application from the applicant, along with the $30 fee for the transaction. The clerk is also required to check the computer system to determine whether the out-of-state license is valid. Assuming that this is done, the clerk may then issue the license without requiring the applicant to take an examination. The computer records regarding the transaction reflect that the applicant surrendered an out-of-state license, the state from which the

license was surrendered, and as described above, the processing registry clerk's identifying number.

Much of the government's case will rest upon the introduction of records from the Rhode Island DMV. The computer records reflect that clerk 113, the defendant, produced each of the 35 licenses identified as having been issued without lawful authority. The transaction report and the reconciliation sheet for the defendant's cash drawer on each of the days in question reflect the fraudulent transaction. According to the Rhode Island DMV records, the licensee in each of the 35 transactions had surrendered an out-of-state license from either New York or Massachusetts. Yet, a check with the New York or Massachusetts DMV showed that those states had never issued a license to the applicant.

Through a search of its records, the DMV determined that in each of the 35 transactions, although the computer records reflect that an out-of-state license was surrendered, there was no application on file. The DMV records also indicate that a picture identification card existed for each of the 35 licensees in question. Thus, a picture was on file with the DMV and did not need to be taken at the time the license was issued. Records custodians from both New York and Massachusetts will testify that for each of the 35 fraudulent licensees, those individuals had never been issued a license from the designated surrendering state. With respect to two of the licenses, the records reflect that the defendant attempted to collect the license from the enforcement section of the DMV. The defendant's time sheet also indicates that she was present at

work on each of the days the 35 fraudulent licenses were produced.

In addition to the record evidence discussed above, the government will offer testimony regarding its controlled purchase of a fraudulent license for $2,500. The government purchased this license from an unindicted co-conspirator named Luis Rivera. According to the DMV records, the defendant was the issuing clerk for the fraudulent license purchased by the government. When Mr. Rivera was arrested on state charges, the government seized paperwork in the name of another of the 35 licensees who had received a license produced by the defendant.

The government intends to call several witnesses who are cooperating with the United States in its prosecution. One of these witnesses, Jose Bueno, purchased a license for $2,300 from another unindicted co-conspirator. As with the controlled purchase, according to DMV records, Mr. Bueno's license was issued by the defendant. The government also intends to call Soraya Santiago, another DMV clerk, who pled guilty to state charges and agreed to cooperate with the federal government in this investigation. Ms. Santiago worked with the defendant at the DMV. She was assigned clerk number 130 and she pled guilty to issuing a number of licenses without lawful authority. According to the DMV records, Ms. Santiago issued these licenses under her clerk number of 130. She will testify that when she issued these fraudulent licenses, she did so at the defendant's request.

When the defendant was arrested, she was found to be in possession of a piece of paper containing the names, dates of birth, and social security numbers of two of the 35

fraudulent licensees. According to DMV records, the defendant produced a license for these two individuals based upon an alleged surrender of a Massachusetts license; however, there was no record that these two individuals submitted an application, nor had either of them been issued a license by the State of Massachusetts. Amongst the paperwork in the defendant's work desk, law enforcement discovered a photocopy of an identification card of one of the 35 licensees with a social security number written on the photocopied page. Also, a review of the defendant's bank records indicates that over the life of the conspiracy more than $20,000 of cash deposits were made to her account.

## III. LAW

### A. CONSPIRACY

A conspiracy is an agreement between two or more persons to commit a particular crime. See United States v. Fenton, 367 F.3d 14, 19 (1st Cir. 2004). It is an agreement to disobey or to disregard the law. See United States v. Pacheco-Ortiz, 889 F.2d 301, 304 (1st Cir. 1989). To convict the defendant of a conspiracy charge, the government must prove that an agreement existed to commit the underlying offense and that the defendant elected to join the agreement intending that the underlying offense be committed. See United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005). The government need not prove that the conspiracy succeeded or was achieved, so long as it proves that there was an agreement to engage in a criminal venture. See

United States v. Waldron, 590 F.2d 33, 34 (1st Cir. 1979) (holding in an importation of stolen goods case, the "government need not prove that goods worth more than $5,000 were actually transported to make out a conspiracy . . . so long as the conspirators planned to transport sufficiently valuable goods"); United States v. Belardo-Quinones, 71 F.3d 941, 944 (1st Cir. 1995).

"A defendant can be indicted and convicted even if the names of his co-conspirators are unknown, as long as the government presents evidence of an agreement between two or more persons." United States v. Nason, 9 F.3d 155, 159 (1st Cir. 1993). The government must prove that the defendant had knowledge of the basic agreement. See United States v. Marsh, 747 F.2d 7, 12 (1st Cir. 1984). However, the defendant need not have knowledge of all of the details of the conspiracy, nor of all of the participants in the conspiracy, nor of their acts. See United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir. 2002). "The essence of a conspiracy is the existence of the conspiracy agreement, not the identity of those who agree." Nason, 9 F.3d at id.

Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though that connection be slight, is sufficient to convict that defendant of knowing participation in that conspiracy. See Marsh, 747 F.2d at 13. The government must prove that each defendant knowingly and intentionally joined the conspiracy. See Pacheco-Ortiz,889 F.2d at 304. A defendant's knowing participation in a conspiracy may be established by proof of surrounding circumstances. See United States v. Paradis, 802 F.2d 553, 559 (1st

Cir. 1986). The agreement need not be express, and may consist of no more than a tacit understanding. See Pacheco-Ortiz, 889 F.2d at id.

A co-conspirator is responsible not only for his own acts, but also for the acts of other conspirators done in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946); United States v. Rengifo, 858 F.2d 800, 807 (1st Cir. 1988). For purposes of criminal liability as a conspirator, one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of his co-conspirators made after the formation of and in furtherance of the conspiracy. Thus, the defendant is bound by all acts committed by co-conspirators in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy. See United States v. O'Campo, 973 F.2d 1015, 1022-23 (1st Cir. 1992).

B. IDENTITY FRAUD

Section 1028 provides that an identification document is "a document made or issued by or under the authority of . . . a State . . . which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals." 18 U.S.C. § 1028. A driver's license is an identification document. See United States v. Singh, 335 F.3d 1321, 1324 (11th Cir. 2003). The government expects that employees of the DMV and the case agent will testify that a driver's license is commonly accepted for the purpose of identification.

A defendant may be convicted of identity fraud even if the defendant did not

produce the identification document herself, but instead caused an innocent third party to produce an identification document. See United States v. Rashwan, 328 F.3d 160, 165 (4th Cir. 2003). In this case, the evidence will show that at the time the defendant produced a fraudulent license, she would print out a temporary license. Also, as part of the production process, she would cause the licensee information to be sent electronically to Visage, a company located in Massachusetts, which produced the permanent Rhode Island driver's license and mailed it directly to the licensee.

Section 1028(a)(1) requires that the government prove a "minimal nexus" to interstate commerce. United States v. Mendez, 528 F.3d 811, 817 (11th Cir. 2008). The government may satisfy this burden by proving that the defendant's actions actually affected interstate commerce, or that the defendant intended to accomplish acts, which if successful, would affect interstate commerce. See id. (proof that the defendant paid $1,000 for a commercial driver's license was in and of itself sufficient to establish a nexus to interstate commerce); United States v. Villareal, 253 F.3d 831, 834 (5th Cir. 2001). In this case, the government intends to elicit testimony from DMV employees and/or the case agent that a driver's license is an identification document used in a wide variety of commercial transactions. Furthermore, an employee of the Rhode Island DMV will testify that the permanent Rhode Island driver's license is manufactured out-of-state by Visage, a company located in Massachusetts. The DMV employee will also testify that Visage mails the driver's license to the licensee in Rhode Island. If the license cannot be delivered, then Visage will mail the license to the Rhode

Island DMV.

The statute also requires the government to prove that the driver's licenses were issued without lawful authority. See 18 U.S.C. § 1028(a)(1); United States v. Bell, 980 F.2d 1095, 1098 (7th Cir. 1992) (allowing the government to call an employee of the Illinois Secretary of State's Office to testify that an individual did not have authority to manufacture Illinois identification cards); see also United States v. Britt, 388 F.3d 1369, 1371 (4th Cir. 2004) (remanded in light of United States v. Booker, 543 U.S. 220 (2005)) (discussing the abuse-of-trust sentencing enhancement for a part-time Social Security Administration clerk who pled guilty to issuing Social Security Account Number cards without proper verification). The government intends to elicit testimony from Mr. Joseph Monteiro, Chief of the Enforcement Section, of the Rhode Island DMV, regarding the procedures registry clerks are required to use when issuing a driver's license. Mr. Monteiro will also testify that Rhode Island law requires that an applicant take an examination before receiving a Rhode Island license unless the applicant surrenders a valid out-of-state license. The government may also, unless the defendant will stipulate, ask the Court to take Judicial Notice of Rhode Island Gen. Laws §§ 31-10-1, 31-10-3, 31-10-12, 31-10-21, 31-10-22, 31-10-24, 31-10-33, the laws setting forth requirements for a Rhode Island driver's license.

C. AGGRAVATED IDENTITY THEFT

To convict the defendant of aggravated identity theft, the government must prove (1) that the defendant committed conspiracy to commit identity fraud or identity

fraud; (2) that during and in relation to one of those felony violations, she knowingly transferred, possessed or used a means of identification without lawful authority; and, (3) that the means of identification belonged to another person. See United States v. Godin, 489 F.Supp.2d 118, 119-20 (D.Me. 2007). The statute requires that the means of identification belong to an actual person, but that person may be living or deceased. See United States v. Jimenez, 507 F.3d 13, 20-22 (1st Cir. 2007). For the identifier to qualify as a means of identification, it must, taken alone or with other information, identify a specific individual. See United States v. Mitchell, 518 F.3d 230, 234 (4th Cir. 2008). While the government must prove that the defendant knew that she did not have lawful authority to use the means of identification in question, the government does not have to prove that the defendant knew that the means of identification belonged to an actual person. See United States v. Mendoza-Gonzalez, 520 F.3d 912, 916 (8th Cir. 2008); United States v. Montejo, 442 F.3d 213, 217 (4th Cir. 2006); Godin, 489 F.Supp.2d at 120-21; United States v. Crounsset, 403 F.Supp.2d 475, 482 (E.D.Va. 2005); see also Jimenez, 507 F.3d at & n.3 ("We note, without comment, that other courts have generally construed the knowledge requirement of 18 U.S.C. § 1028A to extend only to knowledge that one lacks the lawful authority to use a means of identification, and not to require knowledge that the means of identification belongs to another."); but see United States v. Villanueva-Sotelo, 515 F.3d 1234, 1242 (D.C.Cir. 2008); United States v. Hairup, 2008 WL 471710 (D.Utah 2008); United States v. Beachem, 399 F.Supp.2d 1156, 1158 (W.D.Wa. 2005).

Section 1028A(a)(1) also requires that the government prove that the transfer, possession or use of the means of identification was without lawful authority. See 18 U.S.C. § 1028A(a)(1). However, nothing in the statute requires that the means of identification must have been stolen. See United States v. Hurtado, 508 F.3d 603, 607 (11th Cir. 2007); United States v. Hines, 472 F.3d 1038, 1040 (8th Cir. 2007). In fact, the defendant may be convicted if she used another person's means of identification with that person's permission, so long as the use was without lawful authority. See Hines, 472 F.3d at id. ("Whether [the defendant] used Miller's name without permission . . . or he obtained Miller's consent in exchange for illegal drugs, [the defendant] acted without lawful authority when using Miller's [name and social security number] .").

D. GOOD CHARACTER DEFENSE

Based upon conversations with defense counsel, the government anticipates that the defendant will attempt to raise a good character defense. As a general rule, evidence of a person's character is not admissible to prove that person acted in conformity therewith; however, Fed. R. Evid. 404(a) permits evidence of a pertinent character trait of the accused offered by the accused or by the prosecution to rebut the same. See Fed. R. Evid. 404(a). "Pertinent" has been interpreted as being synonymous with "relevant." See United States v. Angelini, 678 F.2d 380, 381 (1st Cir. 1982) (trait of law-abidingness is relevant and admissible); United States v. Kinsella, 545 F.Supp.2d 158, 160-61 (D.Me. 2008); see also United States v. Sullivan, 85 F.3d 743, 752 (1st Cir. 1996) (the decision to admit evidence that witness had no prior criminal convictions is

within the discretion of the district court). Evidence that someone is kind or a good family person is not relevant. See United States v. Santana-Camacho, 931 F.2d 966, 968 (1st Cir. 1991).

Fed. R. Evid. 405 controls the method in which character, if admissible, may be proved. That rule provides that proof may be made by testimony as to reputation or by testimony in the form of an opinion. See Fed. R. Evid. 405; Kinsella, 545 F.Supp.2d at 161. The defendant is not entitled to ask questions about specific instances of good conduct or about specific character traits. See Kinsella, 545 F.Supp.2d at id. "On cross-examination, inquiry is allowable into relevant specific instances of conduct." Fed. R. Evid. 405.

If the defendant in this case is allowed to elicit evidence of her good character, then the government intends to inquire on cross-examination if the witness is aware that the defendant is present in the United States illegally. The defendant entered the country on a non-immigrant Visa, subsequently overstayed the authorized period of admission, was served a charging document for immigration proceedings in 2002, and was ordered deported in 2004. The defendant's order of deportation was finalized on March 27, 2006.

Additionally, on June 16, 2000, the defendant completed an Employment Eligibility Verification, Form I-9. On that form she declared under penalty of perjury that she was a citizen of the United States. This was and is not true. Accordingly, pursuant to Fed. R. Evid. 404 and Fed. R. Evid. 405, the government intends to inquire

on cross-examination of any witness who attests to her good character whether the witness is aware of this instance of misconduct.

E. STATEMENT OF THE DEFENDANT

The government may introduce some of the defendant's statements to law enforcement. That being said, any such statements made by the defendant may not be introduced by her, as they would constitute inadmissible hearsay. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993) (rejecting a defendant's attempt to admit a co-defendant's statement as an admission by a party-opponent and recognizing "[t]he Government is the party opponent of both defendants."); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

## IV. VOIR DIRE AND JURY INSTRUCTIONS

The government will file its proposed jury instructions under separate cover. The government does not have any proposed voir dire questions at this time.

## V. EXHIBIT LIST

The government will submit an exhibit list under separate cover prior to the commencement of trial.

VI. <u>ESTIMATED TIME OF TRIAL</u>

The government estimates that it will take five days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2008, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Arthur Chatfield
236 Broadway
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj